101/616
130/136
101/616
137/367
101/616
142/143
101/616
146/20
101/616
148/95
151/628
101/616
187/11
101/616
204/340
101/616
205/194
101/616
26 SC 20
101/616
30 SC 139
101/616
33 SC 180
33 SC 196

# City of Erie *versus* Magill.

1. A foot passenger on the sidewalk of a city street, who, with full knowledge of the dangerous character of an obstruction on the pavement, deliberately attempts to walk over it, when he could have avoided it by a slight detour into the street, and who falls and is injured in such attempt, is guilty of contributory negligence per se. Hence, in an action brought in such case by the injured person against the city to recover damages for the injury, on the ground that the municipal authorities had negligently allowed such obstruction to remain in the highway for several weeks, the court should direct a verdict for the defendant.

2. A foot passenger in the streets of a city attempted to cross a high ridge of snow very slippery on the surface which sloped at an acute angle across the sidewalk into the street. While making this attempt she fell and sustained severe injuries. The ridge had existed for about three weeks prior to the accident, and it was commonly regarded as dangerous. Many passers-by were in the habit of turning out into the street to avoid it. The foot passenger in question had previous knowledge of the condition of the ridge, and it was in the daytime that she attempted to cross it. In an action brought by her against the city to recover damages for her injuries : *Held*, that the evidence showed that she had been guilty of such contributory negligence as to preclude her right of recovery, and that the jury should have been instructed to find for the defendant. *Held further*, that it was error in the above case to leave the question of contributory negligence to the jury.

December 6th 1882. Before SHARSWOOD, C. J. MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Erie county :* Of July Term 1882, No. 35.

Case, by Penelope Magill, against the city of Erie, to recover damages for injuries suffered by her from falling on a ridge of ice on a foot-pavement in said city. Plea, not guilty.

The case was tried before GALBRAITH, P. J., and a jury. The plaintiff claimed that the fall was occasioned by the negligence of the defendant in permitttng a dangerous ridge of ice to accumulate and remain for an unreasonable time on the sidewalk where she fell while lawfully walking thereon. The defendant offered no evidence, but claimed that it appeared by the plaintiff's own testimony that the plaintiff was guilty of contributory negligence, in attempting to cross the ridge of ice having full knowledge of its dangerous condition, when she could easily have avoided it by walking round it where there was a safe passage.

The evidence on this subject is fully detailed in the opinion of this court.

The defendant presented, inter alia, the following point :—

7th. Under the evidence in the case the verdict must be for the defendant.

Answer. We decline to take the case from the jury as re-

[City of Erie v. Magill.]

quested. It is strongly urged by counsel that the knowledge of plaintiff was not of the condition on the date of the occurrence, but at a period prior, and that she had a right to presume that the defect had been remedied, and that if so believing she trusted the walk and met with the accident the rule of contributory negligence will not apply. The question is for you. What is the fact? Did she know of its condition on that day and could she have avoided it? If so she cannot recover.

Verdict for plaintiff, for $4,800, and judgment thereon. The defendant took this writ of error, assigning for error the refusal to affirm the above point.

*Theo. A. Lamb,* City Solicitor, for the plaintiff in error.— The evidence on behalf of the plaintiff below showed (1) that the place in question was dangerous to walk over; (2) that the plaintiff had full knowledge of such danger; (3) that although she could easily have avoided the danger she deliberately encountered it. In such case it is the duty of the court to instruct the jury, as matter of law, that the plaintiff cannot recover: Pennsylvania Railroad Co. *v.* Ogier, 11 Casey 60; Catawissa R. R. Co. *v.* Armstrong, 2 P. F. S. 282; Pittsburgh & Connellsville R. R. *v.* McClurg, 6 P. F. S. 294; McKee *v.* Bidwell, 24 P. F. S. 218 223; Goshorn *v.* Smith, 11 Norris 435; Baker *v.* Fehr, 1 Out. 70; Wharton on Negligence § 400; Durkin *v.* City of Troy, 61 Barb. 437.

*L. S. Norton* (with him *J. W. Wetmore* and *M. E. Dunlap*), for the defendant in error.—The evidence of plaintiff's knowledge of the dangerous condition of the locus in quo being referable to a time prior to the accident, the question of contributory negligence was properly submitted to the jury: Wharton on Negligence § 403; Hutchins *v.* Boston, 12 Allen 572; Whitaker *v.* Boylston, 97 Mass. 273; Reed *v.* Northfield, 13 Pick. 94; Garrigan *v.* Berry, 12 Allen 85; Snow *v.* Railroad Co., 8 Allen 441. It is only where the undisputed evidence is so clear that it does not admit of any other theory, that the court can decide that the plaintiff was guilty of contributory negligence per se: Penna. R. R. Co. *v.* Ogier, 11 Cas. 60; Catawissa R. R. Co. *v.* Armstrong, 2 P. F. S. 282; Penna. R. R. Co. *v.* McTighe, 10 Wr. 316. It is not contributory negligence per se to pass over a public highway, even if known to be dangerous, provided due and reasonable care was used; Erie City *v.* Schwingle, 10 Harris 384; Humphreys *v.* County of Armstrong, 6 P. F. S. 204; Lower Macungie Township *v.* Merkhoffer, 21 P. F. S. 276; City of Lancaster, *v.* Kissinger, 11 W. N. C. 151; Weiss et al. *v.* Penna. R. R. Co., 29 P. F. S. 387.

[City of Erie *v.* Magill.]

Mr. Justice GREEN delivered the opinion of the court, December 30th 1882.

But a single question is presented by this case. It is, whether, upon the undisputed evidence, the plaintiff contributed by her own negligence to the injury she sustained. The learned judge of the court below charged the jury that " whatever may have been the condition of the street, or however dangerous, if the plaintiff knew of such danger and could have avoided it by turning aside, or by going on the opposite side of the street, but instead of doing so chose to run the risk of passing over the dangerous spot, and so encountered the hurt and injury complained of, she would be guilty of what is called in the law contributory negligence, and your verdict should be for the defendant." That this was a correct statement of the law applicable to the case cannot be doubted, and is not questioned by the learned counsel for the plaintiff. The counsel for the city asked the court to instruct the jury that under all the evidence the verdict must be for the defendant. This the court declined to do, but left to the jury the question of the plaintiff's knowledge of the condition of the street on the day of the accident, and her ability to avoid it, thus, " The question is for you. What is the fact ? Did she know of its condition on that day, and could she have avoided it ? If so, she cannot recover." This action of the court constitutes the subject of the only assignment of error on the record. After a patient examination of all the testimony in the case, we have reached the conclusion that the defendant's seventh point should have been affirmed, and a verdict for the defendant directed.

The plaintiff sustained her injury by slipping and falling upon a ridge of ice and snow extending across the sidewalk from the inside or building line of the street, to, and beyond the curb, and out into the street. This ridge, as described by the plaintiff and her witnesses, was from three to four feet high on the inside line, where some bill-boards were erected, and sloped down gradually all the way across the sidewalk and into the street. The plaintiff herself testified that it was three or four feet high next the bill-boards, that it was about eight inches above the sidewalk at the outer edge, and being asked the question : Q. " How high was the crown of the ridge above the walk, north and south of it ?" A. ". About eight inches high, I think, where I stepped upon it." She also said the ridge was about three feet across from one side to the other. The accident occurred in broad daylight, between three and four o'clock in the afternoon. Another of the plaintiff's witnesses testified, " I don't think it (the drift) was less than four feet deep near the bill-boards, and extended out into the street across the walk ; I don't think it was less than two and a-half

[City of Erie *v.* Magill.]

feet in the centre of the street; in the centre of the sidewalk; I think it extended for at least four feet into the street, and at an angle of not less than forty-five degrees."

It is not necessary to repeat the other testimony on this subject as it is all of the same character. It is manifest therefore that the obstruction on the sidewalk was plainly visible, was conspicuous both as to its extent and character, and necessarily obtruded itself upon the notice and attention of every passer along the walk. It was in no sense a slight or partially concealed defect such as might have escaped the notice of one walking on the pavement, moreover the plaintiff admits that she had often noticed the drift before the accident in going to her brother's across Tenth street. The evidence is equally conclusive and entirely undisputed as to the character, the dangerous character, of the obstruction. It was not a mere ridge of snow, but had become icy on the surface and very slippery. The plaintiff testified, " I stepped upon a ridge of ice that ran across the sidewalk and my feet both slipped and I was thrown with great force against a bank of ice behind me and injured me severely." And again, being asked, " What was the condition of the walk where you fell?" she said, " It was icy, the snow having drifted around those bill-boards, and made a bank, and it had melted and frozen together until it became icy." Another witness for the plaintiff, Mr. Dunning, said, " It was hard and compact" and " it was icy." Another witness, Mr. Moody, said, " At this time it was icy; I remember it from the fact that it was quite icy at the time," and also, " it was very slippery indeed." Magill, another of plaintiff's witnesses, testified that " there was a permanent drift along this walk from that time in January, certainly for a long time there was a very heavy drift of snow and ice." He also said, in reply to a question, " what was the surface?" A. It was comparatively smooth and icy; one had that feeling that footing was insecure on it; it was an old drift." Mrs. Magill, another of plaintiff's witnesses, said, "then the cold came freezing the tracks, leaving a very irregular icy surface on top of the drift." There was more testimony of the same kind and none whatever in contradiction. Had there been no other testimony on this subject, we think there was quite enough to charge the plaintiff with full knowledge of the extent, the nature, and also the character of the obstruction as hazardous and dangerous. But there was much more and equally conclusive testimony on that subject, also. Mr. Hoffman, a witness for the plaintiff, having said that the ridge was about two feet on the curbstone, and that the pitches of the ridge were very steep, was asked, " what called your attention to the condition of the walk at that time?" and answered, " because mornings when we went to work we always had to go on the

[City of Erie *v.* Magill.]

street; we could not go on the sidewalk" and again, "we went to work in the morning and had to cross in the middle of the street." Moody, another of plaintiff's witnesses said, "it (the ridge) crossed the curbstone at this point, and the walk traveled by parties coming down Peach street, was shut off by this ridge, and the whole travel thrown into the street where the line of the drift crossed the curbstone," and again, "it was so bad that I would not walk on it, either in going down or coming back, and on that block I walked in the street." W. E. Magill, after describing the drift said, "therefore it was to my mind a risky place. I always felt a little risky going up or coming down." And again, "the south-east pitch made it a source of anxiety when I walked along; I always felt a little anxious about myself as I walked along there, and the inclination was to drop down on Peach street instead of taking the risk of going on Tenth street." Mrs. Magill said, "I noticed also from my window that persons in coming from below Tenth street would come to this drift and go around it even into the street; coming down street they often came to the top of this drift, and would stand, either way they turned it was slippery, and I have seen people stand there, and I have said to my sons that that walk was dangerous."

Rev. J. H. Edwards, another of plaintiff's witnesses, said, speaking of the drift and slope, "that became very icy, and very dangerous, very rough on the side towards the bill-boards although some passed there: some went around in the street;" also "It was impassible and dangerous for ladies especially." And again: "At the time of the accident, and for a long time before, it was a very dangerous piece of walk there; driving people into the street unless they preferred to run the risk of it." E. Linfort, another of plaintiff's witnesses, testified, "I pass there on an average about three or four times a day, and the walk was awful bad. I slipped down myself; we had to go out into the street about ten feet from the curb to get around that pile of snow that had accumulated there." Mrs. Humphrey, who was present when the accident occurred and assisted the plaintiff to arise, testified: "Q. What was the condition of the walk where the accident occurred. A. There was a drift running across it at least three feet high, that was very glassy and icy—smoothly traveled—and where it began on the south side it was not so steep as it was on the north. It was a gradual slant on the south, much steeper on the north; it was a steep pitch on the north side; it was while going over the top of that when she fell" . . . . "there was a descent towards the street but the drift extended into the street: it was impossible to pass, without going into the street, without going over the drift: towards the street the snow was tramped smooth and glassy: across the gut-

[City of Erie *v.* Magill.]

ter it was trod smooth, it was like ice," . . . . "it was trodden smoothly into the gutter: it was a gradual slope and glassy towards the street east." Against this mass of testimony there was not one word of contrary proof. It was absolutely without question, upon undisputed proof that the drift of snow and ice which the plaintiff attempted to cross was a serious and a palpable obstruction in her way, that it presented a smooth slippery, icy surface upon which to tread, that it was several feet in width and elevated above the pavement with inclining sides, and that it was dangerous to pass over and so regarded by many of those who traveled along the way. If it was right to instruct the jury that the plaintiff could not recover if she knew of the condition of the walk on the day of the accident, and could have avoided it, it was certainly the duty of the court to say so if the undisputed evidence proved those facts. This has been many times decided: Penna. R. R. Co. *v.* Ogier, 11 Cas. 60; Catawissa R. R. Co. *v.* Armstrong, 2 P. F. S. 282; Pittsburgh & Connellsville R. R. Co. *v.* McClurg, 6 P. F. S. 294; McKee *v.* Bidwell, 24 P. F. S. 218; Goshorn *v.* Smith, 11 Nor. 435; Baker *v.* Fehr, 1 Outerbridge 70.

We do not know how the conclusion could be resisted that the plaintiff had knowledge of the dangerous character of the drift, from the testimony already referred to. The drift was before her eyes with all the indications of its dangerous character plainly visible. She could not but be conscious of them. Had she been riding along the street in a carriage she might not have noticed it, but she was a foot passenger, along this very walk, and the drift was in her path. She was compelled to cross it or go around it. She attempted to cross it, and it is contrary to all human experience to suppose that she did so without noticing the surface upon which she was treading. She does not pretend to say that she did not notice it. On the contrary, she gives a minute description of it, and specially points out the elements of danger that were apparent. She does not say that she acquired this knowledge after the event. On the contrary, she expressly testifies that she knew of the drift before, had often noticed it, and thought it was dangerous. She testified as follows:

"Q. You speak of there having been a drift upon that sidewalk for sometime before? A. Yes, sir. Q. How do you know that was so? A. In going across Tenth Street to my brothers I often noticed the snow lying there. Q. Had you before this injury? A. Yes, sir, I had noticed the bank there. Q. You are certain about that? A. Yes, sir. Q. What had called your attention to the bank of snow there; had it seemed to you dangerous? A. Yes, sir. Q. You had spoken about its condition, and about its being dangerous? A. I don't recol-

lect, I remember I had thought of it.   Q. You had thought of
it ?   A. Yes, sir."

We can not regard this testimony as inconsiderate or unin-
tended.   In its substance it corresponds with all the other
testimony in the case, and there is nothing in its delivery
indicating that the witness was taken unawares.   It appears to us
to be the frank and candid statement of a truthful witness and
made with deliberation.   We are of opinion that all the testi-
mony including that of the plaintiff clearly proves that the drift
of snow and ice, which she attempted to cross, was of a
dangerous character, and that this was known to her at the time
of the injury.   That she could have avoided it by going around
it, was conclusively proved by herself and her witnesses and
was disputed by none.   She was asked :   " Q. Could you have
avoided that walk by going toward the street farther?   A.
Only by going almost to the other side of the street.   Q. Across
the roadway?   A. Yes, sir; this water extended out some
distance into the street."   In view of this condition of the
testimony we think the case should have been taken from the
jury and the defendant's seventh point affirmed.   In other
courts similar rulings have been made upon a similar state of
facts, though of much less strength than those developed in this
case.   Thus in the case of Wilson and Wife *v.* City of Charlestown,
8 Allen 137, it was held that a person who voluntarily attempts
to pass over a sidewalk which he knows to be very dangerous
by reason of ice upon it, when he might easily avoid it, can
not maintain an action against the town, which is bound to keep
the way in repair, to recover for injury sustained by falling upon
the ice.   On p. 138 the court say : " It is settled that if a person
knows a way to be dangerous when he enters upon it, he can
not in the exercise of ordinary prudence proceed and take his
chance, and if he shall sustain damage look to the town for
indemnity."

In the case of City of Centralia *v.* Krouse, 64 Ill. 19, the
court in their opinion say, " Having undertaken to go where
he knew it was positively dangerous, it must be held that he
did so at his own peril.   It was in daylight, and he could see
that the walk was full of dangerous holes, and was all covered
with snow and ice, and it was culpable negligence in him to
undertake to pass over it.   It was probably dangerous for any
one, and it was highly imprudent in one so far advanced in life
to undertake to pass over the walk in its then condition, and
covered as it was with snow and ice.   .   .   .   It is not denied
that he could have gone to the point where he desired to go by
a safe route by going only a short distance further.   It was his
plain duty to have taken the safer course.   This he declined to
do, but chose to go where he himself knew that it was dangerous,

[City of Erie v. Magill.]

and the injury that resulted must therefore be attributed to his want of proper care and caution."

In Durkin v. Troy, 61 Barb. 437, the court say, "Now, the foundation of this plaintiff's cause of action, if he had one, is that this piece of ice was a dangerous obstruction to the passage of those using the sidewalk for that purpose, which the city was bound to remove, and the danger consisted in the liability of those who stepped upon it to slip and fall. The obstruction was, therefore, one to be avoided by those using the sidewalk and seeing, or being able to see, the ice; and if it could readily be avoided, the failure to avoid it by one using the sidewalk, and plainly seeing the obstruction, must be accounted negligence. If there was danger in walking over this piece of ice, and the plaintiff voluntarily and unnecessarily undertook to walk over it, and fell and broke his leg, I do not see how he can meet the allegation that his own negligence contributed to the result, or avoid the conclusion that he must therefore fail to recover damages of the city. *Volenti non fit injuria.*" . . . "If the ice presented a dangerous obstruction which the defendant was bound to do away by removal or some other means, so that it was negligence on its part to leave it on the sidewalk, it must follow that it was negligence on the part of the plaintiff, voluntarily and unnecessarily, to venture upon this dangerous obstruction, however carefully he might attempt to carry himself upon it. The duty of the passenger in such cases is to avoid the obstruction, and not to encounter its dangers."

In Butterfield v. Forrester, 11 East 60, Lord ELLENBOROUGH, C. J., said, "A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right." These principles are quite familiar, and could be sustained if necessary by an extensive citation of authorities, but that is not requisite.

Judgment reversed.

GORDON, TRUNKEY and STERRETT, JJ., dissented.