Canfield *v.* Philadelphia, Appellant, et al.

Argued October 5, 1938.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, PARKER and RHODES, JJ.

*James Francis Ryan,* with him *John J. K. Caskie,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant.

*Arthur S. Minster,* with him *William W. Mentzinger, Jr.,* for appellee.

OPINION BY RHODES, J., March 3, 1939:

Plaintiff brought this action in trespass against the City of Philadelphia to recover damages for injuries which she sustained as the result of falling on the sidewalk in front of premises known as 8521 Germantown Avenue in that city. By writs of scire facias the city joined as additional defendants Integrity Trust Company, trustee under the will of Isaac S. Currier, deceased, and Eugene Currier, the city alleging that the former "owned and controlled" and that the latter "controlled, possessed, and had the right of possession of" the premises in question. At the close of the trial a verdict was directed in favor of Integrity Trust Company, and the jury rendered a verdict for plaintiff in the amount of $2,500 as against the City of Philadelphia, and, by direction of the court, a verdict in favor of the City of Philadelphia and against Eugene Currier in the same amount. Both plaintiff and the city moved for a new trial, and the latter also moved for judgment in its favor non obstante veredicto. Plaintiff's motion for a new trial was withdrawn, the city's motion for a

new trial was not pressed, and it, together with the motion for judgment in its favor non obstante veredicto, was dismissed by the court below. ∤ From the judgment entered accordingly the city has appealed.

The only assignments of error relate to the judgment and to the refusal of the court below to grant the motion for judgment n. o. v. Appellant does not ask for a new trial. The argument of appellant advances the usual contentions, namely, (1) that appellant was not negligent; (2) that appellee was contributorily negligent. In deciding both questions we are obliged to read the testimony in the light most advantageous to appellee, all conflicts therein being resolved in her favor, and she must be given the benefit of every fact and inference of fact, pertaining to the issues involved, which may reasonably be deduced from the evidence. *Muehlhof v. Reading Co.*, 309 Pa. 17, 162 A. 827.

Appellee testified that on February 8, 1936, at about 9 A.M., she left her car at the corner of Germantown Avenue and Evergreen Street, and went to a store at 8514 Germantown Avenue, where she made some purchases. She then walked north on Germantown Avenue to Evergreen Street, where she crossed to the east side of Germantown Avenue and walked south on the east side of Germantown Avenue to a store at 8511 Germantown Avenue, where she also made some purchases. In order to reach No. 8511 she had to cross the pavement of 8521, and "noticed in going down that [she] had to use utmost care at this pavement at 8521." Returning she said that "when I reached 8521 I slipped on a piece of ice and fell. My heel catching on a clump 'of ice which kept 'my foot from shooting out like⸱lots of times it does when you fall ......" Appellee located the point where she fell as three feet from the curb, and approximately three feet north of the dividing line between premises 8519 and 8521 Germantown Avenue. The cause of her fall was described as "hills and ridges of ice," the height 'of which was "approximately around

five inches, four inches, four or five inches." One of appellee's witnesses described the condition at the place where she fell as a slope of snow coming in about three feet upon the sidewalk from a bank two feet high at the curb. He said that underneath the snow there were lumps of ice about six or seven inches high, and that the condition had existed for about two weeks. Another witness for appellee testified substantially in accordance with what has been stated, and said that the condition had existed for about eight days. Both witnesses agreed that appellee fell just at the edge of the slope of snow. With the exception of Miss Currier, a witness for appellant, there was general agreement in the testimony that the slope ended about 3 or 4 feet in from the curb. One of appellee's witnesses estimated the pavement to be 10 or 12 feet wide, and another said there was 6 or 8 feet of pavement between the edge of the snow covered ice and the house line.

(1) With reference to the negligence of appellant the general rule as to the liability of a municipality in such cases as the present is found in *Bailey v. Oil City et al.*, 305 Pa. 325, at page 327, 157 A. 486, where, in an opinion by Mr. Justice WALLING, citing the relevant authorities, our Supreme Court said: "A municipality is, in general, not liable for accidents resulting from the icy condition of its streets and walks. ...... This is so because of the practicable impossibility of keeping cartways and sidewalks free from ice in this climate during the winter season. ...... It is, however, a city's duty to cause the removal from the walks of such substantial ridges or hills of ice or snow as constitute an obstruction to travel. ...... While the height and size of the ridge perhaps is not capable of exact definition, it must be at least such as to be generally observable as unsafe and likely to cause injury to travelers. The ridge must be shown to be of sufficient size to constitute a real danger to pedestrians. Something more must appear than the mere rough surface of the walk. ...... Furthermore,

it must appear either that the city had actual notice of the obstruction or that it had existed so long as to amount to constructive notice." See, also, *McDonough v. Munhall Borough,* 331 Pa. 468, 200 A. 638; *Beebe et al. v. Philadelphia,* 312 Pa. 214, 167 A. 570.

When the legal principles enunciated in the Bailey case are applied to the evidence in the instant case, it is apparent that it is sufficient to sustain the finding of the jury that appellant was negligent. It portrays lumps or hills and ridges of ice about six or seven inches high at a point three or four feet in 'from the curb line which had existed for eight days to two weeks. See *Llewellyn v. Wilkes-Barre,* 254 Pa. 196, 98 A. 886. Cf. *Roop v. City of Philadelphia,* 266 Pa. 353, 109 A. 595.

(2) In determining whether the record convicts appellee of contributory negligence as a matter of law, we find in her testimony that the hills and ridges were not visible prior to her fall, because they and the entire pavement were covered with snow. Apparently the condition of the pavement improved as it approached the house line. But the hills and ridges were "pretty much" general all over it. She was unable to use the portion of the pavement that she had used when walking south "because there were people standing at the store, congregated around the store, and I had to get out. . . . . . . There were people there standing and I had to make an effort to go around, which you would naturally do, just walk around. . . . . . . There were pedestrians before that store. I can't tell you how many. I didn't take notice. But there were people there that made me come out a little further than what I did when I went down." As to the concealment of the ice by the snow she was corroborated by her witnesses, one of whom also mentioned the presence of other pedestrians on the sidewalk at the time of the accident. Appellee was required to exercise reasonable care for her safety *(Anderson et ux. v. Supplee-Wills-Jones Milk Co.,* 119 Pa. Superior Ct. 386, 181 A. 368; *Butcher v. Philadel-*

*phia,* 202 Pa. 1, 51 A. 330), and the slippery sidewalks called for additional caution *(Lane v. Dickinson,* 276 Pa. 306, 120 A. 264). But this does not mean that she was obliged to keep her eyes fastened upon the ground continually to discover possible dangers directly in her path. The law imposed the duty to use ordinary precautions in observing where and how she was going and all obvious impediments in her way. She could assume that the pavement was in reasonably safe condition unless there was an open or exposed obstruction or danger. If the ridge of ice was clearly discernible by her, and she had a reasonable way to avoid it, her failure to exercise ordinary precaution would preclude recovery. *Davis v. Wilkes-Barre,* 286 Pa. 488, 134 A. 105. If the danger was manifest it was appellee's duty to have avoided it if she could have done so by the exercise of proper care under the circumstances, which would have been to take a safe way to her destination if one existed. If she could have avoided the danger on the pavement by going into the street or even crossing over to the other side, it was her duty to do so. *Evans v. Philadelphia,* 205 Pa. 193, 54 A. 775. Appellant contends that appellee violated both rules in that the danger was obvious and a safer way existed. As our review of the testimony shows, the evidence on her behalf negatives both contentions. The issue was properly submitted to the jury, and, as with the question of appellant's negligence, the record supports the verdict. In *Davis v. Wilkes-Barre,* supra, upon which appellant relies, the obstruction consisted of a lump of ice eighteen inches long, four inches high, and six inches wide covered by an inch of snow. In that case plaintiff admitted that the lump was apparent; she was warned of it by a companion just before reaching it; and the otherwise clear sidewalk was unoccupied by other pedestrians. These facts distinguish it from the case at bar.

The instant case is not like those where plaintiff tested an obvious danger and ignored a safer path, such as

*City of Erie v. Magill,* 101 Pa. 616; *Boyle v. Borough of Mahanoy City,* 187 Pa. 1, 40 A. 1093; *Brown et ux. v. Philadelphia,* 267 Pa. 183, 110 A. 164; *Davis v. Wilkes-Barre,* supra; *Fordyce et ux. v. White Star Bus Lines,* 304 Pa. 106, 155 A. 98; *Jordan v. City of Pittsburgh et al.,* 332 Pa. 230, 3 A. 2d 677; *Rothacker v. Philadelphia,* 42 Pa. Superior Ct. 408. Instead, we think it falls within the class of *Steck v. City of Allegheny,* 213 Pa. 573, 62 A. 1115, *Llewellyn v. Wilkes-Barre,* supra, *Campbell v. Vincent et al.,* 259 Pa. 419, 103 A. 110, *Duvall v. City of New Castle,* 74 Pa. Superior Ct. 573, where the dangerous condition was hidden from plaintiff by snow, or, as in the Duvall case, by a baby carriage pushed by a companion.

"It is not necessarily negligence to attempt to pass over even a 'noticeable accumulation' of ice on the pavement. That may depend on the size and shape of the accumulation, the obviousness and magnitude of the danger, the means at hand of avoiding it, and other circumstances": *Brown v. White,* 206 Pa. 106, at page 109, 55 A. 848, at page 849. According to appellee's evidence the danger was neither great nor imminent, and whether, under all the circumstances, she performed the duties required of her was for the jury. *Steck v. City of Allegheny,* supra.

Appellant contends that appellee's testimony "shows an evident intent to deceive" and therefore should not "be allowed to create a liability against [appellant]" or "be favorably considered by a Court in determining the question of that liability." This argument ignores the rule that upon the issue raised by the assignments all that we are called upon to decide is whether there was competent evidence to support the jury's verdict. *Burns et al. v. Elliott-Lewis Electrical Co., Inc.,* 118 Pa. Superior Ct. 243, 250, 179 A. 47. "Testimony may bear the stamp of truth or the badge of fraud and perjury. Who is to pass upon its value? The jury alone. The court cannot invade the province of the jury": *Linde-*

*mann v. Pittsburgh Railways Co.*, 251 Pa. 489, at page 493, 96 A. 1085, at page 1086. A situation more favorable to defendant prevailed in *McDevit v. Philadelphia*, 35 Pa. Superior Ct. 317, at page 318, where we said: "The very strong weight of the testimony appears to be against the truth of the testimony of the plaintiff and her mother. In addition to this, three or four of the plaintiff's own witnesses contradict the testimony of the plaintiff and her mother as to the accumulation of snow and ice on the sidewalk, its thickness and as to the hills and ridges. But the jury adopted the plaintiff's story as to the condition of the sidewalk and the learned judge who saw the witnesses and heard them testify, approved the verdict by entering judgment thereon."

It may be, as appellant in effect argues, that appellee and her witnesses steered a careful course in their testimony, but we cannot for that reason stamp it as inherently incredible. It was properly submitted to the jury.

Assignments of error are overruled.

Judgment is affirmed.