## Taylor et ux. *v.* Philadelphia, Appellant, et al.

Argued October 10, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*I. Jerome Stern,* with him *John J. K. Caskie,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant.

*Robert C. Fable, Jr.,* with him *Raymond A. White, Jr.,* for appellee.

OPINION BY RHODES, J., December 19, 1939:

Plaintiffs brought this action in trespass against the City of Philadelphia to recover damages for injuries sustained by wife plaintiff, as the result of falling on the sidewalk in front of premises known as 1812 Church Lane in that city. By writ of scire facias the city joined as additional defendants Herman H. Black and Edward Y. Townsend, the tenant and owner, respectively, of the premises mentioned. At the close of the trial a verdict was directed in favor of Townsend, and the jury rendered a verdict for wife plaintiff against the City of Philadelphia, and a verdict in favor of the city against Herman H. Black in the same amount. The City of Philadelphia and Black both filed motions for judgment in their favor n. o. v., and for a new trial, which were dismissed. From the judgment entered accordingly, the city has appealed.

The first and third assignments of error, which relate to the refusal of appellant's motion for judgment n. o. v. and the refusal of its point for binding instructions must be sustained, because the evidence, viewed in the

light most favorable to appellee, fails to establish that appellant had actual or constructive notice of the existence of the alleged obstruction of ice upon the sidewalk. Such proof was an essential of appellee's case. Hence appellant's point for binding instructions should have been affirmed, or its motion for judgment n. o. v. subsequently granted. As said in *Bailey v. Oil City et al.*, 305 Pa. 325, at page 327, 157 A. 486, at page 487: "It must appear either that the city had actual notice of the obstruction or that it had existed so long as to amount to constructive notice."

The general rule as to the liability of the municipality in such cases as the one at bar has been reiterated recently in *Bailey v. Oil City et al.*, supra; *Beebe et al. v. Philadelphia*, 312 Pa. 214, 167 A. 570; *McDonough v. Munhall Borough*, 331 Pa. 468, 200 A. 638; *Coyle v. City of New Kensington*, 336 Pa. 401, 9 A. 2d 405; *Canfield v. Philadelphia et al.*, 134 Pa. Superior Ct. 590, 4 A. 2d 605.

Since the alleged negligence of appellant, upon which appellee relied, was permitting the accumulation through the action of natural forces of dangerous ridges of ice, an indispensable element of her case was a showing that not only was there such a condition as to constitute a serious obstruction to traffic, but also, in the absence of actual notice, that it had existed a sufficient length of time to constitute constructive notice to appellant, and to allow the latter a reasonable period within which to remove the danger. *Beebe et al. v. Philadelphia*, supra, p. 217.

It may be assumed, for present purposes, that appellee brought her case within the first part of this rule. She testified that she tripped on a ridge of ice and fell; that the ridge was on Black's property, "just in front of the steps" and about midway between those steps and the curb; that the ridge was about four or five inches high, and about the same number of inches in length and width. At the time of her fall the ridge was covered

by a light fall of snow, which was still in progress. But the record is devoid of evidence establishing how long this condition had existed. Appellee's own testimony furnished none. The only other witness in this connection was a Mrs. Slough, who lived at 1810 Church Lane, and of whom appellee's counsel said, during the course of her examination: "By this witness I am endeavoring to show constructive notice on the part of the city." It appeared from records of the weather bureau of the United States Department of Agriculture that snow began to fall on January 22, 1935, and ceased on January 24, at which time there were 14.9 inches of snow on the ground. Thereafter no appreciable amount of snow fell until February 5th, the day of the accident. Mrs. Slough estimated the depth of the snow on the sidewalk in question as twelve to fifteen inches at the end of the January storm, and said that between then and the time appellee fell the sidewalk had not been cleaned. She testified: "Q. What was the condition of the pavement on January 25th? A. Well, the snow was still there and the longer the snow laid it was freezing and it became ice. Q. What was the condition on the 26th? A. Well, practically the same, but as the time wore on people passing back and forth the snow kind of made a path—I mean the people made a path in the ice. Q. How about the 27th? A. About the same. Q. And the 28th of January? A. Well, as I say, it was the same, because the weather was freezing all the time, and we don't get any sun on that side of the street at all. ...... Q. What was the condition of the sidewalk then on January 29th? A. Well, as I say, the ice got smaller and smaller and got like ridges in, you know, where you walk." From then until February 5th, she said, the condition of the sidewalk remained about the same, and, when snow began to fall on the latter date, the ice resulting from the previous snow was still there. On cross-examination she testified: "Q. And you say that the sidewalk had shoe marks from people treading

over it; is that right? A. Yes. Q. Is that what caused the so-called ridges that you have described? A. Yes."

This witness said nothing about the existence of the condition to which appellee had referred as the cause of her fall. Since Mrs. Slough did not even mention the ridge of ice described by appellee, it follows that her testimony was likewise silent on the length of time the ridge had existed. On the other hand, the general condition of the sidewalk, as described by Mrs. Slough, was not such as to impose liability on appellant. "A ridge is an elevation, not a mere uneven surface caused by foot prints. No case was called to our attention and we know of none where a municipality has been held liable merely because of such uneven surface. It would be as impossible for a city to keep its walks smooth in such weather as to keep them free from ice. In other words, the mere uneven surface, caused by walking upon ice as it freezes, does not constitute such an obstruction as the law condemns. It is incident to the existence of ice upon the walks": *Bailey v. Oil City et al.*, supra, 305 Pa. 325, at page 328, 157 A. 486, at page 487.

In *Kohler et ux. v. Penn Township*, 305 Pa. 330, 157 A. 681, wife plaintiff tripped and fell on a sidewalk covered with ice, which had become rough by being walked upon, and was also under a light fall of snow. She said nothing about a ridge of ice. Plaintiffs contended that this was shown by the testimony of a witness who said that (p. 331) "the walk was in very bad condition and had been icy for three or four days, that she had slipped there once and, further, 'After ice [has] been on the pavement a couple of days, it gets sort of choppy and little ridges in it and you can't get a foothold on it. ...... When I say ridges, I mean just little bumps; it was bumpy, you know; it was rough. ...... Ice that you skate on, I would call smooth, and ice that is not smooth I would say there are little ridges and ·bumps in it.'" After verdicts for plaintiffs the court

below entered judgments n. o. v. for defendant, which were affirmed by the Supreme Court. Mr. Justice WALL-ING, speaking for the court, after referring to the general rule that a municipality is not liable for the general icy condition of its cartways and walks, said (p. 332):

"It is also true that ice when in the process of formation or when softened by a rise in the temperature will show footprints of the pedestrians who walk thereon and thereby its surface will become uneven and rough. This is characteristic of all walks and is as impossible to prevent as is the presence of the ice. Hence, a municipality is not liable for the mere rough condition of the ice upon its walks, and this case presents nothing more.

"Of course, where ice is suffered to remain upon a walk in substantial ridges that constitute an obstruction to travel, the municipality may be liable. The ridge must be shown to be of such substantial size and character as to be a danger to the public, not a mere uneven surface caused by walking upon the ice. The proof must describe the alleged ridge as to size and character and be such as to support a finding that it was a substantial obstruction to travel. Plaintiff does not meet the burden of proof by showing such surface, even though a witness may refer to it as consisting of little ridges or bumps." See, also, *Coyle v. City of New Kensington,* supra.

Consequently, appellee failed to prove that appellant had constructive notice of the condition which caused her injury, and there is no evidence from which it could be said that appellant had actual notice thereof. For want of this essential element of proof appellee's case must fail. *Chase v. City of Erie,* 102 Pa. Superior Ct. 288, 290, 156 A. 630.

It is unnecessary to discuss the remaining assignments, and they are accordingly overruled.

Judgment is reversed, and here entered for defendant.