## Neistadt v. Philadelphia, Appellant, et al.

Argued October 11, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*I. G. Gordon Forster,* with him *John J. K. Caskie,* Assistant City Solicitors, with him *Joseph Sharfsin,* City Solicitor, for appellant.

*Joseph G. Feldman,* with him *A. Albert Feldman,* for appellee.

OPINION BY RHODES, J., December 19, 1939:

Plaintiff brought this action in trespass against the City of Philadelphia to recover damages for injuries sustained by her as the result of falling on the sidewalk in front of premises known as 1011 South Fourth Street in said city. By writs of scire facias the city joined as additional defendants The Pennsylvania Company for Insurances on Lives and Granting Annuities, and Blanche F. Kleiner, who is the same person as Blanche F. Kleiner Wolfson, the former being the owner, and the latter the occupant, of the premises in question. The trial resulted in a nonsuit as to The Pennsylvania Company for Insurances on Lives and Granting Annuities, and a verdict for plaintiff "against the City of Philadelphia, defendant, with the right to recover from the added defendant." The city's motion for judgment in its favor n. o. v. was overruled, and judgment entered on the verdict. Assigning only these as errors, it has appealed.

The accident occurred at 3 p. m. on February 18, 1936. Relative to the condition which was the alleged cause of her fall, appellee testified: "A. Well, when I returned, when I was walking, I took all the precautions I possibly could, when I came to that pavement; I knew the pavement was very severe, and I tried to—in fact, I stopped to see where I can put my feet in more safety, because there was a light snow covering the ridges. I made a couple of steps and I turned right in front of the entrance, and I reached out my right hand and got hold of the railing from the steps. As I was to raise my right foot to get on the step, my left foot slipped, and I lost the grip of my right hand and I went like into a circle and fell on my left side, with my left foot twisted under me. ...... Q. What was the condition of the ice on the portion where your left foot slipped? ...... A. ...... When I turned around with my foot, the ice, the snow was brushed off, and I noticed that there was a ridge of ice right by the step which was about three or maybe more long, and about the same

—By the Court: Q. Three or four what? Inches or—
A. Inches, long. And about three or four high, and
something about an inch and a half or about across.
By Mr. Feldman: Q. And about how high? An inch
and a half to two inches high did you say? The Court:
No, she said four inches high. Mr. Feldman: An inch
and a half to two inches across, was it, your Honor?
The Court: Yes. The witness: Yes." On cross-exami-
nation of appellee it appeared that the top of the ridge
of ice was almost level with the first step, and extended
from that point "about one-third the distance into the
sidewalk." Appellee did not attempt to state how long
this condition had existed, and her testimony is entirely
silent on that subject. However, concerning the gen-
eral condition of the sidewalk in front of the premises
in question, she testified that it "was icy, very icy, and
full of ridges, all over the entire sidewalk"; that it had
been there "the entire winter"; that "it was very bad.
It was full of ridges and uneven ridges"; that "on the
18th it was worse. ...... The entire pavement—the
pavement was full of ridges"; that "toward the last
the ridges, the ice, accumulated higher, and it was more
dangerous to walk on it"; that "the entire pavement
was covered with ridges of ice and very slippery, in
some parts of the pavement. ...... They were there
during the entire winter, from the middle of January
until the 18th of February, as far as I know."

Appellee's witnesses, offered for the purpose of prov-
ing that appellant had constructive notice of the danger-
ous condition or obstruction that was alleged to have
caused appellee's fall, said nothing as to how long the
ridge of ice in front of the steps had existed. Instead
they testified concerning the general condition of the
sidewalk. One of them said that on the day of the
accident there was three inches of ice on the sidewalk,
which had been there from the middle of January to
the day of the accident, and that "where people had
walked anywhere it had made like it was ridges, very

uneven." On cross-examination he stated that he had never noticed the slope described by appellee. The other said that he had noticed ice on the sidewalk in question for "probably about two or three weeks," and that "it was tramped on, there was so many people walking up and down, they were walking on it, and the footprints on the walkway would make little hills in it."

Appellee's statement that "on the 18th it was worse" would indicate that the condition encountered by her on that day had not existed prior thereto. In any event, the testimony viewed in the light most favorable to appellee did not meet the requirement that the proofs must not only describe the alleged ridge as to size and character, and be such as to support a finding that it was a substantial obstruction to travel (*Kohler et ux. v. Penn Township,* 305 Pa. 330, 332, 157 A. 681), but must also show that the city had actual notice of the obstruction or that it had existed so long as to amount to constructive notice (*Bailey v. Oil City et al.,* 305 Pa. 325, 327, 157 A. 486, 487).

As in *Taylor v. City of Philadelphia,* 138 Pa. Superior Ct. 194, 10 A. 2d 75, the evidence here is insufficient to charge appellant with constructive notice of the condition to which appellee ascribed her fall, and for the reason stated in the Taylor case the judgment must be reversed.

Judgment is reversed, and here entered for defendant.